UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

GENEVA RAISOR,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )   CASE NO. 4:06-cv-0180-DFH-WGH
                                        )
INDIANA-AMERICAN WATER                  )
COMPANY, INC.,                          )
                                        )
                    Defendant.          )

ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Geneva Raisor has sued defendant Indiana-American Water Company, Inc. ("IAWC") for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She claims that IAWC discriminated against her based on her sex when it failed to promote her to the position of Equipment Operator and later, after she was promoted, disqualified her from the positions of Equipment Operator and Fitter. Raisor also alleges that IAWC retaliated against her for filing a charge of discrimination with the Equal Employment Opportunity Commission when it suspended her for five days without pay. IAWC has moved for summary judgment on all claims. As explained in detail below, the court grants IAWC's motion.

*Summary Judgment Standard*

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual issue is genuine if there is sufficient evidence for a reasonable jury to find in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law. *Id.* The motion should be granted only if no rational fact-finder could find in favor of the non-moving party. *Id.* at 249.

When ruling on the motion, the court must view all the evidence in the record in the light most favorable to the non-moving party and must resolve all factual disputes in the non-moving party's favor. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

*Facts for Summary Judgment*

The following statement of facts is not necessarily objectively true. As the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to plaintiff as the non-moving party. *Reeves*, 530 U.S. at 150.

IAWC owns and operates water and wastewater utilities.  IAWC employs approximately 30 people at its Jeffersonville, Indiana facility.  Maynard Dep. 15-16.  Raisor began her employment at IAWC on April 16, 2002 as a meter reader.  At all times during her employment at IAWC, she has been a member of the International Brotherhood of Electrical Workers.  The terms of her employment are governed by the collective bargaining agreement between the union and IAWC.

In July 2005, IAWC posted an opening for the position of Equipment Operator at the Jeffersonville location.  An Equipment Operator's job responsibilities include flushing hydrants; operation and maintenance of distribution valves; maintenance and repair of services, mains, valves, and hydrants; driving company vehicles such as a truck with a backhoe trailer; and operation of a backhoe.  Raisor Dep. Ex. 26.  An Equipment Operator also uses jackhammers and other power equipment such as pumps and saws.  Maynard Dep 23-24.  An Equipment Operator must possess a valid commercial driver's license to be able to drive the company truck.  Raisor Dep. Ex. 26.

Raisor submitted a bid for the Equipment Operator position on July 11, 2005, when she had accrued 3.25 years of seniority.  She noted on her bidding form that she was qualified for the position based on "hands on familiarization" with the Case 580 backhoe and fifteen years experience operating tractors.  Maynard Aff. Ex. 3.  She explained in her deposition that her experience working

with a backhoe was helping her cousin move garbage, debris, and dirt, and did not include digging.  Raisor Dep. 92.  Raisor did not have a commercial driver's license when she submitted her bid.  Jeff Greams, who had one year of seniority in his position as a pipe fitter with IAWC, also submitted a bid for the Equipment Operator position.  Maynard Aff. Ex. 4.  He stated on his bidding form that he had held a commercial driver's license for fourteen years and had fourteen years experience operating a backhoe in the water line field with a different employer.  He also stated that he had been operating the backhoe at IAWC when no one else was available and while the position was vacant.  Maynard Aff. Ex. 4.

Roger Maynard, Network Operations Superintendent at IAWC, provided each bidder with an opportunity to demonstrate his or her backhoe skills as a part of the application process for the Equipment Operator position.  Each applicant drove the truck and trailer from the garage to the test area, backed the trailer between two cones, unloaded the backhoe from the trailer, and drove the backhoe to an open field.  Each applicant was asked to dig a hole of specific dimensions with the backhoe with square, straight sides while keeping the pile of extracted dirt (the "spoil") between two and four feet away from the hole.  Raisor claims that Maynard did not tell her that she had to keep the spoil two feet away from the hole until after she had already begun to dig.  After Maynard gave her this instruction, she complied with it.  Raisor Dep. 85.  Next, the applicants were asked to backfill the hole, reload the backhoe onto the trailer, and drive the truck and trailer back to the garage.  Raisor Dep. 81-85; Maynard Dep. 33-34.  Raisor claims that in

addition to the above tasks, she was asked to back the truck between two fixed posts.  She told Maynard she would not be able to complete this task, but he encouraged her to try.  Only after she had attempted and failed to back the truck between the posts did Maynard tell her not to worry about it.  She claims that when Gream told Maynard he would not be able to back through the posts, Maynard told him not to worry about it and did not press him to attempt the task. Raisor Dep. 82-83.

Maynard selected Gream for the Equipment Operator position.  Raisor contacted the IAWC ethics hotline to complain that the decision to award Gream the position was improper.  She also filed multiple grievances.  Her primary contention was that she was entitled to the Equipment Operator based on Article 9, Section 1(b) of the collective bargaining agreement, which states that whenever two employees have sufficient and substantially equal qualifications for an open position, the company will select the employee with more seniority.  Raisor Dep. 90.  To resolve the grievances, IAWC entered into a written Memorandum of Understanding with Raisor and the union on September 15, 2005.  Raisor Dep. Ex. 38.  IAWC agreed to award Raisor the Equipment Operator position, conditioned on her obtaining a valid commercial driver's license by December 1, 2005.  IAWC also agreed to pay for the cost of obtaining this license.  Until she obtained the license, Raisor would begin working as a Fitter, which is a job similar to Equipment Operator but does not require operation of the backhoe or driving the company truck.  Maynard Dep. 32.

Raisor began working with the New Albany crew made up of Bryan Reschar, Jeff Gream, and herself.  When she began, she had difficulty performing some of the required tasks.  For example, she had difficulty backing up the truck while the air compressor was attached, as well as removing and tightening inlet heads.  Raisor Dep. 121.  She also had difficulty operating the 90-pound jackhammer.  Raisor Dep. 115-17; Maynard Dep. 27-28.  She claims that by December 2005, she was able to operate the 90-pound jackhammer safely.  *Id.* at 116.  Raisor was transferred to a different crew in Jeffersonville after she complained that the work environment was hostile and that she was not being trained properly on the New Albany crew.  Maynard Dep. 85-86.

While she was a Fitter, Raisor injured her hand when it slipped off a tool while she was working in a pit.  Raisor Dep. 123.  Mr. Gream also reported sustaining two injuries while working with Raisor.  In the first incident, Raisor and Gream were lifting a hydrant together and Gream strained his back when the weight of the hydrant shifted toward him.  Raisor Dep. Ex. 45 at 3.  In the second incident, Raisor dropped her end of a plywood sheet without warning and caused Gream to strain his back again.  *Id.*  Maynard also reported that there was a "near miss" when Raisor dropped her end of a C900 pipe without warning and could have injured a colleague.  *Id.*

The union filed two grievances in November 2005 related to Raisor.  The first alleged that other employees were assigned tasks that she was unable to perform,

which caused unfair extra work for the other employees.  Maynard Aff. Ex. 5.  The second grievance alleged that IAWC was failing to provide a safe work environment to other employees because Raisor was unable to perform certain aspects of her job safely.  Maynard Aff. Ex. 6.

IAWC decided to conduct an investigation into on-site safety.  Ed Vandall, manager of loss control at IAWC, interviewed Raisor and all members of the New Albany and Jeffersonville crews who had worked with her.  Raisor told Vandall that she could not operate the jackhammers safely and that she expected her colleagues to assist her in performing duties that were difficult for her.  Vandall Aff. ¶ 6.  Each of Raisor's colleagues reported to Vandall that they were concerned about Raisor's ability to perform her job safely.  Vandall Aff. Ex. 1 at 1-4.  Vandall concluded that Raisor had created an unsafe work environment and that allowing her to continue working as an Equipment Operator would pose a risk of serious injury to personnel and property.  *Id.* at 6.

IAWC advised Raisor on December 8, 2005 that she was being disqualified from the Equipment Operator and Fitter positions based on her inability to perform the job requirements.  The letter informing Raisor of her disqualification stated:  "Based on our review of all the facts and circumstances, we have decided to disqualify you from these two positions due to inability to perform the requirements of the job.  We are taking this action now because this has caused and is causing an unsafe work environment for yourself and others."  Raisor Dep.

Ex. 52.  Raisor was returned to her position as meter reader effective December 9, 2005.

Pursuant to the collective bargaining agreement, Raisor filed several grievances as a result of her disqualification, including one that alleged she had been disqualified because of her sex.  Pl. Ex. D.  She withdrew her grievances before arbitration.  Raisor Dep. 185.  She also filed a charge of discrimination with the EEOC on January 20, 2006 alleging sex discrimination based on the skills demonstration, her non-selection for the Equipment Operator position, and her disqualification from the Equipment Operator and Fitter positions.  Raisor Dep. Ex. 3.  One month after her disqualification, Raisor bid for and was denied the Fitter position that had become vacant based on her disqualification.  Maynard Aff. Ex. 7.

On July 26, 2006, Raisor informed Maynard that she needed to leave work early to go to a doctor's appointment.  Maynard advised Raisor that she would need to bring a doctor's note to work the following day.  The following day Maynard asked Raisor for the doctor's note.  Raisor believed that Maynard was asking her for the note because he did not believe her absence was legitimate.  Raisor Dep. 212-14.  She asked Maynard several times why he did not believe that her absence was legitimate and asked him to come with her to talk to the union representative.  The union representative told her that Maynard had the right to ask for the doctor's note.  Maynard also showed her the relevant provision of the

collective bargaining agreement that authorized him to request a note. *Id.* at 215. Only after Maynard told her that she would not get paid for the time she took off if she did not present a doctor's note did Raisor hand him the doctor's note that she had kept in her purse all along. *Id.* at 218-19. IAWC suspended Raisor for five days as a result of this incident. Raisor filed a charge of discrimination with the EEOC on August 17, 2006 alleging that this suspension was unlawful retaliation based on her filing of an EEOC charge of discrimination in January 2006. Raisor Dep. Ex. 4. On December 26, 2006 Raisor filed this employment discrimination action.

*Discussion*

I.   *Failure to Promote*

    A.   *Prima Facie Case*

Plaintiff Raisor first argues that IAWC discriminated against her on the basis of her sex in failing to promote her to the position of Equipment Operator. She has no direct evidence of sex discrimination and proceeds under the indirect burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, a plaintiff who can establish a *prima facie* case of employment discrimination creates a rebuttable presumption that the employer's actions were discriminatory, and shifts the burden of production to the employer to articulate a legitimate, non-discriminatory reason for its actions.  If the employer provides a legitimate, non-discriminatory reason, the burden shifts to the plaintiff to show that the proffered reason is a false pretext, which permits a trier of fact to infer that the real reason for the decision was illegal discrimination.  *E.g.*, *Hancock v. Potter*, 531 F.3d 474, 478 (7th Cir. 2008); see generally *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (explaining role of pretext in indirect proof of race discrimination claim under Title VII).

To establish a prima facie case for failure to promote, a plaintiff must offer evidence that:  (1) she is a member of a protected class, (2) she was qualified for

the position she sought, (3) she was rejected for the position, and (4) the employee selected was not a member of the protected group and was not better qualified than the plaintiff.  *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003).

Raisor meets the first and third prongs of the test because she is a female and she was rejected initially for the position of Equipment Operator.  Though the defendant has pointed out that Raisor did not have a commercial driver's license when she applied for the Equipment Operator position, which was a requirement for the position, the defendant has not contested that she was qualified for the position.  Both parties also agree that Jeff Gream, a male, was selected for the position initially.  Thus, the only disputed point is whether Gream was better qualified for the position than Raisor.

Raisor argues that she was entitled to the promotion to Equipment Operator based solely on her seniority.  Article 9, Section 1(b) of the collective bargaining agreement between IAWC and the international Brotherhood of Electrical Workers Local Union 1393 states:  "whenever two (2) or more employees have sufficient and substantially equal qualifications for a vacant or open position, Company service will prevail in the selection made by the Company."  Pl. Ex. G at 2.  Article 9, Section 2 states that IAWC shall be the judge of the qualifications for a job.  *Id.* at 3.

IAWC maintains that it considered two factors when determining the applicants' qualifications for the Equipment Operator position: experience and performance in the skills test. Raisor's experience consisted of "hands on familiarization" with the Case 580 backhoe and fifteen years experience operating tractors. Maynard Aff. Ex. 3. She had no experience using a backhoe to dig. Raisor Dep. 93. In contrast, Jeff Greams had fourteen years experience operating a backhoe in the water line field with a different employer. He also had been operating the backhoe at IAWC when no one else was available and while the position was vacant. Maynard Aff. Ex. 4.

Raisor claims that Maynard asked her to back the truck through two posts during her skills demonstration and did not ask Gream to do the same. Raisor Dep. 82-83. She also claims that Maynard did not tell her to keep her spoil pile at least two feet from the hole she dug until she had already begun digging. Raisor Dep. 85. When asked at her deposition if she was able to dig a straight hold of the required dimensions during the skills demonstration, she stated: "Maybe it was straight for myself but maybe not as straight as Roger wanted." Raisor Dep. 84. Raisor testified at her deposition that she watched Gream perform his skills demonstration and that he completed all of the required tasks successfully, including digging a hole with straight sides of the required dimensions. Raisor Dep. 86.

While some of the facts about the skills demonstration are disputed, those disputes are not material.  The undisputed evidence shows that the information available to IAWC demonstrated that Gream had more experience and skill using a backhoe than Raisor, regardless of her greater seniority with the company. Raisor conceded that the hole she dug was not as straight as Maynard expected, while Gream was able to perform the skills demonstration with no errors.  Thus, the undisputed facts show that Gream was better qualified for the Equipment Operator position than Raisor.  Because Raisor has not provided evidence that she was as qualified for the Equipment Operator position as Gream, she has not established a *prima facie* case of sex discrimination based on IAWC's failure to promote her.[1]


B.     *Pretext*

If the plaintiff had met her burden of establishing a *prima facie* case, a presumption of discrimination would arise and the employer would need to articulate a legitimate non-discriminatory reason for its employment action. *Moser v. Indiana Department of Corrections*, 406 F.3d 895, 900 (7th Cir. 2005). Even if Raisor had established a *prima facie* case for failure to promote her to the

---

[1]In her complaint, Raisor also asserted a claim for failure to promote based on IAWC's failure to promote her to a Fitter position in January 2006.  She has failed to address this claim in her response to IAWC's motion for summary judgment and thus has waived this claim. *Sanders v. Village of Dixmoor*, 178 F.3d 869, 870 (7th Cir. 1990).

Equipment Operator position, IAWC has responded that its decision not to promote her was based on her comparative lack of qualification for the position.

To survive summary judgment, Raisor must present evidence that would allow a reasonable jury to find that IAWC did not honestly believe the reason it gave for not awarding her the Equipment Operator job. See *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). She must show that IAWC's assertion that she was not as qualified as Gream or sufficiently qualified to perform the requirements of the position was a mere pretext, meaning a lie or a "phony reason." See *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995).

Raisor has not presented any evidence that IAWC's proffered reason for failing to promote her was pretext. All of her arguments related to pretext relate to the reasons she was disqualified from the Equipment Operator and Fitter positions. Pl. Br. 18-19. Thus, even if she had established a *prima facie* case by showing a genuine issue as to her qualifications as compared to Gream's, she has failed to offer evidence indicating that IAWC did not honestly believe that Gream was better qualified. IAWC would still be entitled to summary judgment based on her failure to present evidence of pretext.

II.     *Disqualification from Fitter and Equipment Operator Positions*

    A.     *Prima Facie Case*

Raisor also alleges that IAWC discriminated against her based on her sex when it disqualified her from the Equipment Operator and Fitter positions before she had completed her six month qualification period.   Raisor relies on the indirect, burden-shifting method of proof, which requires her to demonstrate that (1) she is a member of a protected class; (2) she was meeting IAWC's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly-situated male employees. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

Raisor is a member of a protected class because she is female, and her disqualifications from the Equipment Operator and Fitter positions were adverse employment actions.   The second and fourth prongs are at issue.

    1.     *Meeting IAWC's Expectations*

Raisor argues that the collective bargaining agreement requires IAWC to give employees who have been promoted a six month period to qualify for the new position.   Pl. Ex. G, Art. 9, Sect. 9.   Essentially, she argues that during her six month qualification period she was meeting IAWC's expectations because  IAWC's expectations were that she would still be in training for the Equipment Operator

position.  By this reasoning, any unsatisfactory performance on her part during the six month period could not establish that she was not meeting IAWC's legitimate expectations.

Raisor grieved her disqualification from the Equipment Operator position on December 8, 2005, claiming, among other things, that it violated the collective bargaining agreement and the memorandum of understanding between her, the union, and IAWC.  Pl. Ex. D.  The Report of Grievance Violation states that the grievance was denied on January 5, 2006.  *Id.*  In an email to the interim Director of IAWC, Raisor referred to a step-three grievance meeting on January 19, 2006 in which Dennis Federle informed her that she had been disqualified from the positions based on safety concerns.  Raisor Dep., Ex. 106 at 2.  Raisor testified at her deposition that she ultimately withdrew her grievance before arbitration. Raisor Dep. 185.

To the extent that Raisor believes that she was entitled to a six month qualification period based on the collective bargaining agreement despite any concerns the company may have had about safety, she must raise that issue through the grievance and arbitration provisions outlined in the collective bargaining agreement.  It is not appropriate for the court to determine the meaning of a provision of a collective bargaining agreement before the plaintiff has exhausted the grievance and arbitration process.  The court could not conclude

there was a violation here because Raisor failed to pursue the matter to a definitive decision.

The undisputed facts show that Raisor was not meeting IAWC's expectations while she was a Fitter and Equipment Operator. Her Probationary/Qualification Period Performance Review dated November 15, 2005 indicated that she was below average in the areas of job knowledge, judgment, quantity or work, quality of work, attitude and cooperation, supervision required, and safety. The only area in which she received a "good" rating was attendance and punctuality. Raisor Dep., Ex. 45 at 1. Significantly, her reviewer noted that she did not retain job information well and had to be shown and told repeatedly how to perform similar tasks. *Id.* at 2. He also noted that she had been involved in three personal injury accidents. *Id.* at 3.

Raisor admitted that she had difficulty performing tasks such as working with a 90-pound jackhammer. Raisor Dep at 160-61. She argues that her ability to perform the required tasks was improving as she developed experience. Nonetheless, the union filed two grievances in November 2005 on behalf of other employees asserting that Raisor's performance problems were dangerous to other employees and were causing them to do extra work for her. The investigation that IAWC conducted regarding these grievances revealed that many of Raisor's colleagues did not believe she was able to perform the Equipment Operator job

-17-

safely.  Vandall Aff. Ex. 1.  Thus, the undisputed facts show that Raisor was not meeting IAWC's legitimate performance expectations.

### 2.    *Similarly Situated Male Employee?*

To demonstrate that another individual is similarly situated to the plaintiff, the plaintiff must show that the individual is "directly comparable to the plaintiff in all material respects."  *Thanongsinh v. Board of Education*, 462 F.3d 762, 774 (7th Cir. 2006), quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).  In determining whether two individuals are sufficiently comparable, the court considers factors such as whether the employees had the same job description, were subject to the same standards, and had comparable experience and other qualifications.  *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002).  The inquiry about similarly situated employees is "not an unyielding, inflexible requirement that requires near one-to-one mapping between employees. . ."  *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. —, 128 S. Ct. 1951 (2008).  Instead, the court must make a "common-sense" factual determination as to whether there are enough commonalities between the individuals to make a meaningful comparison.  *Id.* This determination may often present a genuine issue of fact that a jury must resolve, but in sufficiently clear cases, it can be made as a matter of law on a motion for summary judgment.

Raisor argues that IAWC treated Scott Benz more favorably than it treated Raisor.  Benz was involved in three incidents as an Equipment Operator in which he exhibited unsafe behavior.  On April 18, 2005, Benz allowed the Skid Steer machine to roll backwards into a company vehicle.  IAWC sent Benz a written warning based on this incident, advising him that any subsequent violations of the safety code would be cause for discipline.  Pl. Ex. F at 1.  On August 4, 2005, Benz was driving a company vehicle when he struck a pole and caused damage to the passenger side door.  IAWC suspended Benz for two days without pay.  Pl. Ex. F at 2.  On March 7, 2006, Benz failed to recognize a safety hazard and did not fill out the trench log correctly.  IAWC issued Benz an oral warning based on this incident.  Pl. Ex. F at 3.  In contrast, Raisor argues that she was disqualified for the Equipment Operator and Fitter positions without receiving any warnings or other incremental disciplinary measures.

Raisor's comparison of the IAWC's treatment of her with that of Scott Benz is flawed in two respects.  First, she has not provided any evidence that Benz was a similarly situated employee.  She has not provided evidence that Benz was involved in any incidents (let alone three) resulting in injury while he was still in his qualification period for the Equipment Operator position.  An employee who is on probation is not situated similarly to an employee who is not on probation. *Steinhauer v. DeGolier*, 359 F.3d 481, 484-85 (7th Cir. 2004), citing *Bogren v. Minnesota*, 236 F.3d 399, 405 (8th Cir. 2000), and *McKenna v. Weinberger*, 729 F.2d 783, 789 (D.C. Cir. 1984).

Second, the incidents for which Benz received discipline from IAWC involved property damage and failure to recognize a potentially dangerous situation.  In contrast, Raisor was involved in three injuries, two to other employees and one to herself.  During the company's investigation of the grievances aimed at Raisor's work, several of Raisor's colleagues had reported that they felt unsafe working with her.  Vandall Aff. Ex. 1 at 1-4.  Vandall concluded that Raisor's inability to perform the requirements of the Equipment Operator position created a risk of a "major injury" to personnel or property.  *Id.* at 6.  Raisor has presented no evidence that Benz's colleagues felt unsafe working with him or that he posed a risk of serious injury to himself, his colleagues, or company property.  Thus, Raisor has not demonstrated that Benz was a similarly situated employee or that IAWC treated any similarly situated male employee more favorably than it treated her.

B.    *Pretext*

As explained above, if the plaintiff meets her burden of establishing a *prima facie* case, a presumption of discrimination arises and the employer must articulate a legitimate non-discriminatory reason for its employment action.  *Farrell v. Butler University*, 421 F.3d 609, 613 (7th Cir. 2005).  IAWC maintains that it disqualified Raisor from the positions because of safety concerns.  To survive summary judgment, Raisor must present evidence that would allow a reasonable jury to find that IAWC did not honestly believe the reason it has

provided for her disqualification.  See *Forrester v. Rauland-Borg Corp.*, 453 F.3d at 419.

Raisor has asserted three arguments with respect to pretext.  First, she argues that IAWC's decision to depart from the mandated six month qualification period casts doubt on its proffered explanation for the disqualification.  However, even if Raisor was entitled to a full six months qualification period despite IAWC's safety concerns, she has presented no evidence that IAWC did not honestly believe that it was entitled to disqualify her before she had completed her qualification period.  A plaintiff cannot prove pretext simply by showing that the employer's actions violated its own personnel guidelines.  *O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir. 1997).  The court's only concern is the honesty of the employer's explanation, not the enforcement of non-binding guidelines.  *Id.* at 671.

Second, Raisor argues that IAWC has provided two different reasons for her qualifications, suggesting that it is not being honest.  She points to references IAWC made to her inability to complete tasks and to use tools properly in its brief for summary judgment.  In contrast, she points to statements that IAWC has made that it disqualified her based on safety concerns.  IAWC's proffered reasons are not inconsistent.  In the letter advising Raisor of her disqualification, IAWC made it clear that it was her inability to perform the requirements of the job that caused the unsafe work environment.  Raisor Dep. Ex. 52.  There is no inconsistency here that would support an inference of pretext.

Finally, Raisor argues that IAWC subjected her performance to stricter scrutiny than the performance of other employees during their qualifying periods. Maynard testified that he observed Raisor working on a regular basis and took notes regarding her performance.   Maynard Dep. 53.   He stated that he kept recorded notes on Raisor because she was having difficulty.  He stated that he did not keep written notes regarding other employees, male or female, during their qualification periods because no other employees had as much difficulty as Raisor during their qualification periods.  *Id*.  Increased monitoring of an employee does not necessarily lead to an inference of discrimination.  The employee must provide evidence that the monitoring was related to her status as a member of a protected class. See *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 725 (7th Cir. 1998) (holding that employee whose absences during her pregnancy were monitored closely had not presented sufficient evidence of pregnancy discrimination).   Raisor has not presented any evidence that Maynard was monitoring her performance because she was female.  Her subjective belief that her sex was a factor that contributed to Maynard's actions is not sufficient to create a genuine issue of material fact.  *Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006).

Thus, even if Raisor had established a *prima facie* case of gender discrimination based on IAWC's decision to disqualify her from the Equipment Operator and Fitter positions, she has not presented evidence that IAWC's

proffered reason for her disqualification was pretext.  IAWC is entitled to summary judgment on this claim.


III.   *Retaliation*

Raisor also claims that IAWC retaliated against her for filing an EEOC charge in January 2006, in violation of 42 U.S.C. § 2000e-3(a), by suspending her for five days.  She has relied on the direct method of proving her retaliation claim. Under the direct method of proof, the plaintiff must present evidence of (1) a statutorily protected activity, (2) a materially adverse action taken by the employer, and (3) a causal connection between the two.  See *Humphries v. CBOCS West, Inc.*, 474 F.3d at 404.  It is undisputed that Raisor filed an EEOC charge on January 20, 2006 alleging gender discrimination, which is a statutorily protected activity.  It is also undisputed that Raisor was suspended without pay for five days after the July 27, 2006 incident, which is a materially adverse action.  The disputed issue is whether the plaintiff has presented a causal connection between her filing the EEOC charge and her later suspension.


Raisor has relied on circumstantial evidence to show a causal connection between her filing the EEOC charge and her five day suspension.  See *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736-37 (7th Cir. 1994).  The Seventh Circuit has recognized two categories of persuasive circumstantial evidence that are relevant to Raisor's claim:  (1) dubious coincidences, such as suspicious

timing, ambiguous statements, and comments or behavior directed at other employees in the protected group; or (2) evidence that the employer systematically treated employees outside the protected class better.  See *id.* at 736.

Raisor offers three arguments to support her contention of a causal connection.  First, in the category of "dubious coincidences," Raisor argues that Maynard was responsible for disqualifying her from the Equipment Operator and Fitter positions and also for suspending her for five days.  The court assumes that Maynard knew that Raisor had filed an EEOC charge in January, but "a trier of fact may not infer action from knowledge alone."  *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 658 (7th Cir. 1991) (holding that knowledge that the date on which employee's pension would vest fully was not sufficient to create a *prima facie* case of age discrimination).  Maynard is Raisor's supervisor, so it is no surprise that he was involved in several different decisions regarding her employment.  This does not constitute a dubious coincidence.

The timing of Raisor's suspension is also not suspicious.  Generally, a plaintiff can establish a causal link between her protected activity and the adverse action by the employer by presenting evidence that the adverse action took place "on the heels of" protected activity.  *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994).  Raisor filed her EEOC charge on January 20, 2006.  She was suspended on August 14, 2006, more than seven months later.  "A substantial time lapse between the protected activity and the adverse

employment action 'is counter-evidence of any causal connection.'" *Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (holding that four month time lapse between protected activity and alleged retaliation was counter-evidence of a causal connection), quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 478 (7th Cir. 1995), abrogated on other grounds by *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004).   The seven month time lapse between protected activity and Raisor's suspension does not constitute suspicious timing, and in fact weighs against a causal connection.

Raisor also argues that Maynard treated Raisor less favorably than other employees because he did not require all employees to bring doctors' notes when they were absent from work.  Maynard testified at his deposition that he always requires employees to bring in doctors' notes when they go to the doctor during work hours.  In contrast, he testified that he does not require a doctor's note if an employee calls in sick one day if he does not suspect that the employee is not legitimately sick.  Maynard Dep. 70-71.  Raisor has presented no evidence of an occasion on which Maynard did not require a male employee or any other female employee to provide a doctor's note when he or she missed work for a doctor's appointment.

Finally, Raisor argues that the five day suspension was a harsh punishment compared to the two day suspension Scott Benz received for damaging a company vehicle.  As discussed above, Raisor has not presented evidence that Benz was

situated similarly to her.  Benz's infractions were based on failing to pay sufficient attention to a safety risk and damaging company property inadvertently.  This is markedly different from intentionally arguing with and challenging the authority of a supervisor.  See *Ineichen v. Ameritech*, 410 F.3d 956, 960-61 (7th Cir. 2005) (holding that employees who violated different provisions of employer's code of conduct were not similarly situated); *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 562 (7th Cir. 1998) (stating that inadvertent act is significantly different from purposeful act).

Maynard's letter informing Raisor of her five day suspension stated that her conduct showed disrespect for a supervisor and an intentional decision not to cooperate with simple company procedures.  Raisor Dep. Ex. 71.  He stated that this conduct was a violation of IAWC's code of conduct for "interfering or refusing to cooperate with authorized supervisory employees in the performance of their duties." *Id*.  IAWC's code of conduct provides that a first offense for interfering or refusing to cooperate with a supervisor justifies a period of six to thirty days off without pay.  Raisor Dep. Ex. 72 at 3.  Raisor's five day suspension was a lighter punishment than that provided for in the code of conduct.  Raisor has not provided evidence that her five day suspension was harsher than the discipline given to any other similarly situated employee.

Because Raisor has failed to present sufficient evidence to support her retaliation claim, the defendant is entitled to summary judgment on this claim.

*Conclusion*

The court grants the defendant's motion for summary judgment on all claims and will enter final judgment accordingly.

So ordered.

Date: August 29, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Douglas J. Heckler
BARNES & THORNBURG LLP
dheckler@mbco.com

Denise K. LaRue
HASKIN LAUTER & LARUE
dlarue@hlllaw.com

Meghan Uzzi Lehner
HASKIN LAUTER & LARUE
mlehner@hllglaw.com

Koryn Michelle Markham
BARNES & THORNBURG LLP
koryn.markham@btlaw.com,melissa.nichols@btlaw.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com,amy.wessling@btlaw.com